## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**NICKOLAS TSUI, on behalf of himself and others similarly situated,**

      **Plaintiff,**

      **v.**

**WALMART INC.,**

      **Defendant.**

**No. 1:20-cv-12309-MPK**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

SUMMARY OF THE SETTLEMENT TERMS ............................................................... 5

   I.   The Proposed Settlement ........................................................................................ 5

     A.   The Settlement Class ........................................................................................ 5

     B.   The Settlement Fund ........................................................................................ 6

     C.   Attorneys' Fees and Costs and Service Award ................................................ 6

     D.   Notice to Class Members, Settlement Administration, and Class Response .................. 7

ARGUMENT ..................................................................................................................... 9

   II.   The Proposed Settlement is Fair, Reasonable, and Adequate ............................... 9

     A.   The Settlement is Procedurally Fair. ............................................................. 10

     B.   The Settlement is Substantively Fair ............................................................ 13

       1.   Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1). 13

       2.   The Reaction of the Class Supports Final Approval (Grinnell Factor 2). ................. 14

       3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ............................................................................. 15

       4.   Plaintiff Would Face Substantial Risks if the Case Proceeded (Grinnell Factors 4 and 5). 16

       5.   Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) ...... 17

       6.   Defendant's Ability to Withstand a Greater Judgment Does Not Detract from the Fairness of the Settlement (Grinnell Factor 7) .................................................... 17

       7.   The Settlement Is Substantial, Even Given the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9). ................................. 18

     A.   The Plan of Allocation Is Fair, Reasonable, and Adequate. ......................... 19

   III.   Final Certification of the Proposed Class is Appropriate ................................. 21

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*In re Austrian & Ger. Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
   Bank*, 236 F.3d 78 (2d Cir. 2001) ....................................................................13, 18

*Baker v. UPS, Inc.*,
   No. 21 Civ. 114 (E.D. Wa., filed March 16, 2021)...............................................12

*Baptista v. Mut. of Omaha Ins. Co.*,
   859 F. Supp. 2d 236 (D.R.I. 2012)........................................................................15

*Braun v. Wal-Mart Stores, Inc.*,
   106 A.3d 656 (Pa. 2014) .......................................................................................17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................... *passim*

*Clarkson v. Alaska Airlines*,
   No. 19 Civ. 0005, 2021 WL 2080199 (E.D. Wash. May 24, 2021) ......................16

*Clarkson v. Alaska Airlines*,
   No. 19 Civ. 5 (E.D. Wa., filed Jan. 7, 2019)..............................................12, 16, 17

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974).................................................................................14

*Haley v. Delta Airlines*,
   No. 21 Civ. 1076 (N.D. Ga., filed March 16, 2021) ........................................12, 16

*Hill v. State St. Corp.*,
   No. 09 Civ. 12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015), *appeal
   dismissed*, 794 F.3d 227 (1st Cir. 2015) ......................................................14, 19, 20

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .............................................................10, 13, 15

*Huntsman v. Southwest Airlines*,
   No. 19 Civ. 83 (N.D. Cal., filed Jan. 7, 2019) ................................................12, 16

*In re Lupron Mkt. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass 2005)...............................................................9, 10, 16, 18

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)...........................15

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   602 F. Supp. 2d 277 (D. Mass. 2009) ...................................................................10

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)................................................................9, 10, 13

*Roberts v. TJX Companies, Inc.*,
   No. 13 Civ. 13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)....................9, 10

*Scanlan v. American Airlines*,
   No. 18 Civ. 04040 (E.D. Pa., filed Sept. 19, 2018) ........................................12, 16

*Travers v. Federal Express Corp.*,
   No. 19 Civ. 6106 (E.D. Pa., filed Dec. 24, 2019) ..........................................12, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................17

*White v. United Airlines*,
   No. 19 Civ. 114 (N.D. Ill., filed Jan. 7, 2019) ...............................................12, 16

**Statutes**

28 U.S.C. § 1291 ......................................................................................................17

38 U.S.C. § 4316(b) ...................................................................................1, 3, 13, 16

CROTTY & SON LAW .............................................................................................22

USERRA....................................................................................................... *passim*

**Other Authorities**

20 C.F.R. § 1002.150.................................................................................................4

Federal Rule of Civil Procedure 23(e) .......................................................................9

Federal Rules of Civil Procedure 23(a) and (b)(3) ....................................................21

Rule 23 ....................................................................................................................17

Rule 23(f) ................................................................................................................17

## INTRODUCTION

Plaintiff Nickolas Tsui ("Plaintiff" or "Tsui") respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Class[1] ("Final Approval Motion").  Defendant Walmart Inc. ("Defendant" or "Walmart") does not oppose this motion.

Plaintiff brought this case to challenge Walmart's policy of not offering paid-leave benefits for employees who take short-term military leave, despite offering paid-leave benefits for other, comparable forms of short-term leave, such as jury duty leave, bereavement leave, and sick leave.  Plaintiff alleges that this policy violates USERRA's requirement that employees who take military leave are entitled to the same "rights and benefits" as employees who take comparable forms of leave.  *See* ECF No. 1 (Compl.) ¶¶ 1-5; 38 U.S.C. § 4316(b).  Walmart denies Plaintiff's allegations and asserts that it has complied with USERRA.

Before commencing this action, Plaintiff's counsel investigated, evaluated, and researched the claim at issue here.  This pre-suit process involved significant research and strategy about the claim's viability and the assessment of industry and statistical data needed to prove the claim.  Before filing suit, counsel sent a letter to counsel for Walmart, along with a draft complaint, that informed Walmart of Plaintiff's claims and invited Walmart to discuss the possibility of settlement.  Walmart responded by exchanging information with Plaintiff about the size and composition of the proposed class, the merits of the claims, and the extent of the alleged damages.  Over the course of more than a year, the parties exchanged information and negotiated the terms of a proposed settlement that would address both retrospective damages and forward-looking claims for programmatic relief.

---

[1]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

On December 31, 2020, Tsui and Walmart entered into a Settlement Agreement under which Walmart will pay a minimum of $10 million and a maximum of $14 million to cover claims by Settlement Class Members from October 10, 2004 through December 31, 2020 ("the Settlement Class Period"), as well as attorneys' fees and costs, a service award to Nickolas Tsui, and the cost of settlement administration.  *See* ECF No. 2-1 (Settlement Agreement) § 5.

In addition, Walmart has committed to implementing a revised military leave policy that, among other things, provides certain paid-leave benefits to eligible employees who take short-term military leave in the future.  *Id*. § 6.  This policy went into effect January 1, 2021, and will provide significant future value to the proposed class and to future Walmart employees who take short-term leave from their jobs at Walmart to perform their military service obligations.

On April 30, 2021, the Court took the first step in the settlement approval process by preliminarily approving the Settlement.  *See* ECF No. 30.  To date, Class Members' response to this settlement has been overwhelmingly favorable.  1,999 Class Members have submitted valid Claim Forms, no Class Member has objected, and only one Class Member has opted out.  Ex. E (Declaration of Melissa Baldwin Regarding Notice to the Class ("Settlement Administrator Decl.")) ¶¶ 13, 14, 16.  Under the terms of the agreement, the claims filed by Class Members will result in a total settlement fund of $10 million.  *Id.* ¶ 15.  Class Counsel, experienced in litigating class action employment and USERRA cases, firmly believe this proposed settlement is in the best interests of the Class.  For these reasons, Plaintiff seeks an order: (1) confirming certification of the settlement Class; and (2) approving the Settlement Agreement, ECF No. 2-1.

The Settlement provides outstanding relief to the Settlement Class, and the factors that Courts in this Circuit consider to assess the reasonableness of a class action settlement weigh in favor of approving the Settlement.  Accordingly, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

Nickolas Tsui currently resides in Dracut, Massachusetts.  ECF No. 1 ¶ 9; Ex. F
(Declaration of Nickolas Tsui ("Tsui Decl.")) ¶ 2.  He began working for Walmart in May 2009,
and currently works at a Walmart location in Hudson, New Hampshire.  ECF No. 1 ¶ 9; Ex. F
(Tsui Decl.) ¶ 2.  In April 2014, Tsui joined the Army Reserve.  ECF No. 1 ¶ 9; Ex. F (Tsui
Decl.) ¶ 3.  As part of his ongoing service obligations, Tsui has regularly taken short-term leave
from his employment with Walmart to fulfill his reservist obligations.  ECF No. 1 ¶ 9; Ex. F
(Tsui Decl.) ¶ 4.

Since at least October 2004, Walmart's employment policies allowed employees to
continue receiving their normal wages or salaries when they were absent for certain involuntary
reasons, including for jury duty or bereavement leave.  ECF No. 1 ¶ 2.  But until 2017, when
employees were absent because of an obligation to perform military service, Walmart did not
provide any continuation of wages or salary; and from 2017 through the end of 2020, Walmart
offered only differential pay (the difference between the employee's Walmart pay and his or her
military pay) for certain kinds of military leave of four days or more.  *Id*. ¶ 2.

In March 2019, Plaintiff's counsel sent a letter to Walmart's counsel, along with a draft
complaint, alleging that these policies violated USERRA § 4316(b), which requires employers to
provide the same "rights and benefits" to employees on military leave as it provides for
comparable forms of leave.  Declaration of Michael J. Scimone in Support of Plaintiff's Motions
for Final Certification of Settlement Class and Final Approval of Class Action Settlement,
Approval of Attorneys' Fees and Reimbursement of Expenses, and Approval of Service Awards
("Scimone Decl.") ¶ 15.[2]  As explained in Plaintiff's counsel's letter, determining whether any

---

[2]     Unless otherwise indicated, all exhibits are attached to the Declaration of Michael J.
Scimone ("Scimone Decl.").

two forms of leave are "comparable" under USERRA and its implementing regulations, 20 C.F.R. § 1002.150, requires courts to examine the average duration of each type of leave; the purpose for which the leave is provided; and the ability of the employee to choose when to take the leave. *Id.* ¶ 16. Tsui's Complaint alleges that short-term military leave – such as the training and readiness obligations undertaken by reservists and members of the National Guard – is comparable in these respects to other forms of involuntary leave such as jury duty, bereavement leave, or sick leave. *Id.* ¶ 17. Therefore, Plaintiff alleges that Walmart had an obligation under USERRA to treat short-term military leave on par with these other comparator leaves. *Id.* ¶ 18.

Although Walmart denies Plaintiff's allegations, it responded by agreeing to explore a settlement. *Id.* ¶ 19. The parties proceeded to exchange information, including position statements outlining their analysis of Tsui's claims and extensive employment data, to enable them to value the claims and evaluate the size of a proposed settlement class. *Id.* ¶ 20. On February 19, 2020, the parties attended a full-day mediation and engaged in an arms'-length negotiation with the assistance of an experienced private mediator, Michelle Yoshida, over the terms of a settlement, including both monetary relief and programmatic changes. *Id.* ¶ 21. After the mediation, the parties continued to negotiate, Walmart provided additional anonymized personnel data, and the parties continued to exchange information about their analysis. *Id.* ¶ 22. The parties exchanged multiple proposals and counter-proposals, which resulted in an agreement in principle in October 2020. *Id.* Between November and December 2020, the parties' counsel exchanged drafts of a Settlement Agreement; developed a claims process, claim forms, and a proposed Class Notice; and issued a Request for Proposals to four experienced claims administrators to jointly recommend a claims administrator to the Court. *Id.* ¶ 23.

The parties executed a final settlement agreement on December 31, 2020. *Id*. ¶ 24. On January 15, 2021, Plaintiff filed his Unopposed Motion for Certification of a Settlement Class, Preliminary Approval of Class Action Settlement, and Approval of the Proposed Notice of Settlement. ECF No. 16. The Court granted Plaintiff's Motion on April 30, 2021. ECF No. 30.

## SUMMARY OF THE SETTLEMENT TERMS

### I.        The Proposed Settlement

The proposed Settlement Agreement provides both monetary and programmatic relief to the Settlement Class Members. With respect to programmatic relief, Walmart has implemented a new military-leave policy that, for all forms of military service covered by USERRA, provides up to 30 days of paid leave per calendar year for employees who perform military service; for eligible employees who exceed the 30-day provision, the policy provides differential pay for up to 12 months per continuous leave. ECF No. 2-1 (Settlement Agreement) § 6.1. With respect to monetary relief, Walmart will pay $10 million to cover the claims that have been filed by members of the Settlement Class, as well as any court-approved attorneys' fees and litigation expenses, any court-approved service award to the Class Representative,[3] and the cost of having a Claims Administrator administer the notice and settlement distribution. *Id*. §§ 5.1, 5.4.1.

### A.        The Settlement Class

The proposed Settlement Class is defined as:

All current and former employees (A) who work or worked for Walmart at a location in a jurisdiction covered by USERRA during the Settlement Class Period; (B) who took Short-Term Military Leave (i.e., 30 days or less) in one or more years during their employment with Walmart during the Settlement Class Period, and (C) during such period of Short-Term Military Leave did not receive the regular wages or salary that they would have earned had they continued to work their ordinary work

---

[3]        Plaintiff's applications for attorneys' fees and costs and for a service award have been filed separately.

schedules.  Excluded from the class are the Judge assigned to the case and any of his
or her relatives.

*Id*. § 2.42.

The parties identified approximately 8,650 potential Settlement Class Members from the

available data who would be eligible to receive a payment under the terms of the settlement and

believe there could be in excess of 10,000 potential Settlement Class Members going back to

2004.  Scimone Decl. ¶ 28.

### B.    The Settlement Fund

For each year in which a Class Member took Short-Term Military Leave ("YML") for

which they file a claim, Walmart has agreed to pay $1,200 into the settlement fund, which will

be increased or decreased as necessary to ensure a minimum fund of $10 million and a maximum

fund of $14 million.  Settlement Class Members who wished to remain in the Settlement Class

and submitted valid and timely Claim Forms will receive a pro rata share of the Class Settlement

Amount, net of approved attorneys' fees and costs, any approved service payment, notice

administration costs, and any taxes attributable to interest earned by the fund.  ECF No. 2-1

(Settlement Agreement) § 5.4.  Settlement Class Members' pro rata shares of the Net Settlement

Amount will be based on the number of years in which they took military leave.  *Id.* §§ 5.1, 5.4.

### C.    Attorneys' Fees and Costs and Service Award

The Settlement Agreement allows Class Counsel to seek an award of attorneys' fees and

reimbursement of litigation expenses.  *Id.* § 5.5.1.  These awards are subject to approval by the

Court, and will be paid from the Class Settlement Amount.  *Id.*  In addition to the relief Plaintiff

Tsui will receive as a member of the Settlement Class, the Settlement allows Tsui to seek up to

$10,000 as a Service Payment, if approved by the Court, to compensate him for his service as the

sole Settlement Class Representative, and such payment will be made from the Class Settlement

Amount. *Id*. § 5.6.1. Walmart takes no position on the amounts requested for attorneys' fees and litigation expenses or the service payment, but does not object to reasonable awards by the Court. These requests are further set forth, and supported, in Plaintiff's Motion for Approval of Service Award and Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, filed simultaneously with this motion. This motion is independent of the outcome of those motions. *Id.* §§ 5.5.1, 5.6.1.

### D.    Notice to Class Members, Settlement Administration, and Class Response

Plaintiff selected RG/2 as Settlement Administrator to distribute the Notice and Claim Form, Court-approved Service Payment, Court-approved attorneys' fees and costs, settlement payments, and to otherwise administer the settlement. *See id*. § 2.8.

In accordance with the Settlement Agreement and the Court's Preliminary Approval Order, (ECF No. 30), on June 18, 2021, the Settlement Administrator sent 8,650 Previously Identified Settlement Class Members on the Settlement Class List the Court-Approved Notice and Claim Form via First-Class Mail. Ex. E (Settlement Administrator Decl.) ¶ 9. The Notice advised Class Members of applicable deadlines and other events, such as the Final Approval Hearing, and how Class Members could obtain additional information. *Id*.; *id*. at Ex. E (Notice Package). The Notice also informed Class Members of Plaintiff's request for a Service Award, as well as Plaintiff's Counsel's intention to seek one-third of the Gross Settlement Fund for attorneys' fees, plus reimbursement of actual litigation expenses and costs. *Id*.; *id*. at Ex. E (Notice Package).

Notice was also published through advertisements on social media platforms and military service-oriented publications such as the Military Times and Stars and Stripes. ECF No. 2-1 (Settlement Agreement) § 7.1.6; Ex. E (Settlement Administrator. Decl.) ¶¶ 6-7. Additionally,

notice was sent to military reserve facilities for posting.  Ex. E (Settlement Administrator Decl.) ¶ 8.  Self-identified class members who were not on the Settlement Class List but believed themselves to be a Settlement Class Member were able to submit a Claim Form.  *Id.* § 2.38.  On August 2, 2021, the Settlement Administrator sent a reminder postcard to all Settlement Class Members who had not yet responded to the settlement, reminding them of the deadlines to submit a claim form, opt out, or object to the settlement.  Ex. E (Settlement Administrator Decl.) ¶ 12.  The Settlement Administrator also took reasonable efforts to locate the address of any Settlement Class Member for whom Notice was returned as undeliverable.  *Id.* ¶ 11.  The Administrator successfully re-mailed approximately 1,096 Notices that had initially come back as undeliverable.  *Id.*  To date, only 686 of the 8,650 Notices were ultimately undeliverable by the United States post office.  *Id.*

During the notice period, Class Counsel assisted the Settlement Administrator by speaking with Settlement Class Members and answering questions about the settlement. Scimone Decl. ¶ 32.  Class Counsel estimate that they communicated with at least 60 Settlement Class Members.  *Id.* ¶ 33.

As of this filing, approximately 15% of all Previously Identified Settlement Class Members (1,305 of 8,650), have submitted valid claim forms, and an additional 694 claims have been submitted by self-identified Settlement Class Members.  Ex. E (Settlement Administrator Decl.) ¶ 16.  Taken together, more than 21.3% of the class members now known to the parties have filed claims.[4]  As of the time of this filing, no Settlement Class Member has objected to the settlement, and only one has opted out.  *Id.* ¶¶ 13-14.  The filed claims reflect a total of 5,462

---

[4]    The claims are currently being reviewed by the Claims Administrator and Walmart to verify the identity of self-identified Class Members and the count of years that will form the basis of the allocation.  These numbers are therefore subject to change.

years in which Class Members took military leave.  *Id.* ¶ 16.  Under the terms of the settlement,

Walmart will pay $10 million to create the Class Settlement Amount.  *Id.* ¶ 15.

## <u>ARGUMENT</u>

**II.        The Proposed Settlement is Fair, Reasonable, and Adequate.**

Federal Rule of Civil Procedure 23(e) requires court approval to ensure that a class

settlement is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).

As courts have recognized, "[a]lthough settlement is often a more favorable result than litigation,

'the court has a fiduciary duty to absent members of the class in light of the potential for

conflicts of interest among class representatives and class counsel and the absent members.'"  *In*

*re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71 (D. Mass. 2005) (quoting *In re Lupron Mkt. &*

*Sales Practices Litig.*, 228 F.R.D. 75, 94 (D. Mass 2005) (citing *In re General Motors Corp.*

*Pick-Up Truck Fuel Tank Prods.*, 55 F.3d 768, 805 (3rd Cir. 1995)).

In exercising their fiduciary duty to determine whether a settlement is fair, reasonable,

and adequate, courts first examine whether there was procedural fairness in the negotiation

process leading to settlement.  *See In re Lupron*, 228 F.R.D. at 93.  There is a presumption of

reasonableness where a settlement is procedurally fair.  *See, e.g.*, *Roberts v. TJX Companies,*

*Inc.*, No. 13 Civ. 13142, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) ("the parties'

Settlement is the product of arms-length negotiation by competent counsel, and . . . it is entitled

to a presumption of reasonableness").  Courts then consider substantive fairness to determine

whether the settlement's terms are fair, adequate, and reasonable by examining the litigation

itself, its complexity and risks, and the possible recovery.  *See, e.g.*, *In re Relafen*, 231 F.R.D. at

71-72; *In re Lupron*, 228 F.R.D. at 93-94.

While the First Circuit has not established a fixed test for evaluating the fairness of a class settlement, several courts in this circuit, including this Court, have looked to the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), to determine substantive fairness.  *See, e.g.*, *In re Lupron*, 228 F.R.D. at 93 (noting that *Grinnell* has supplied the "most commonly referenced factors," and applying them); *In re Relafen*, 231 F.R.D. at 72; *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009); *Roberts*, 2016 WL 8677312, at *6.  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Plaintiff now respectfully requests final approval of the Settlement as fair, reasonable, and adequate.[5]

## A.    The Settlement is Procedurally Fair.

The proposed Settlement is procedurally fair because it was reached through arm's-length negotiations after experienced counsel had adequately evaluated the merits of the claims.  Where the parties exchange "multiple settlement proposals" and engage in settlement discussions over a number of months, those are "persuasive indicators" that a settlement was "the result of negotiations conducted at arms' length."  *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010).

---

[5]    Walmart does not concede Plaintiff's allegations, but as noted earlier, does not oppose certification of the proposed Settlement Class solely for purposes of settlement.

Here, the negotiations between the Parties spanned ten months after an extended period of data exchange and analysis, and involved numerous proposals. Scimone Decl. ¶¶ 21-24. After exchanging substantial discovery about Walmart's policies and the putative Class Members, the Parties engaged in a full-day mediation session on February 19, 2020, overseen by Michelle Yoshida, an experienced mediator in the field of labor and employment law. *Id.* ¶ 21. After the mediation, the Parties continued to negotiate the terms of the settlement, Walmart provided additional anonymized personnel data, and the parties continued to exchange information. *Id.* ¶ 22. The mediation and subsequent negotiations entailed exchanges of multiple proposals and counter-proposals, which resulted in an agreement in principle in October 2020. *Id.* The parties executed a final settlement agreement on December 31, 2020. *Id.* ¶ 24.

These arm's-length negotiations involved counsel well versed in class action litigation and employment law. Plaintiff and the Settlement Class are represented by lawyers who are recognized as national leaders in USERRA litigation and who have been appointed as class counsel and successfully prosecuted numerous employment class actions. *Id.* at ¶ 10. Class Counsel were uniquely situated to conduct a litigation project of this scope due to the balance of skills and resources that their firms bring to the team. Outten & Golden LLP and Block & Leviton LLP are both nationally-recognized firms with established track records of litigating employment class actions on behalf of plaintiffs. *See* Scimone Decl. ¶ 4; Ex. A (Declaration of Joseph Barton in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Barton Decl.")) ¶ 2; Ex. A (Barton Decl.) at Ex. A (Block & Leviton Firm Resume). Gupta Wessler PLLC is a top-tier appellate firm and its practitioners have argued appeals in appellate courts throughout the country, including the U.S. Supreme Court. Ex. B (Declaration of Peter Romer-Friedman in Support of Plaintiff's Motion for

Attorneys' Fees and Reimbursement of Expenses ("Romer-Friedman Decl.")) ¶ 4.  The practices

of Crotty & Son PLLC and the Law Office of Thomas G. Jarrard both focus on representing

servicemembers in a wide range of USERRA matters; their principals, who have served in,

respectively, the U.S. Army's 75th Ranger Regiment and the U.S. Marine Corps, have deep

knowledge of both USERRA and the challenges of balancing military and civilian obligations.

Ex. D (Declaration of Matthew Crotty ("Crotty Decl.")) ¶¶ 4, 8, 9; Ex. C (Declaration of Thomas

Jarrard in Support of Class Counsel's Motion for an Award of Attorneys' Fees and

Reimbursement of Expenses ("Jarrard Decl.")) ¶¶ 5, 19.

      Class Counsel are currently prosecuting seven other cases with similar paid-leave claims.

*See Scanlan v. American Airlines*, No. 18 Civ. 04040 (E.D. Pa., filed Sept. 19, 2018); *Huntsman*

*v. Southwest Airlines*, No. 19 Civ. 83 (N.D. Cal., filed Jan. 7, 2019); *White v. United Airlines*,

No. 19 Civ. 114 (N.D. Ill., filed Jan. 7, 2019); *Clarkson v. Alaska Airlines*, No. 19 Civ. 5 (E.D.

Wa., filed Jan. 7, 2019); *Travers v. Federal Express Corp.*, No. 19 Civ. 6106 (E.D. Pa., filed

Dec. 24, 2019); *Baker v. UPS, Inc.*, No. 21 Civ. 114 (E.D. Wa., filed March 16, 2021); *Haley v.*

*Delta Airlines*, No. 21 Civ. 1076 (N.D. Ga., filed March 16, 2021).  In these cases, Class Counsel

have survived three motions to dismiss (in *Scanlan*, *Huntsman*, and *Clarkson*); won two appeals

from dismissal (in *White* and *Travers*); obtained class certification in two cases (in *Huntsman*

and *Clarkson*); and are now litigating one motion for class certification (in *Scanlan*), two

motions to dismiss (in *Baker* and *Haley*), and appealing from one adverse grant of summary

judgment (in *Clarkson*).  Through these cases, Class Counsel have developed the claims at issue

in this litigation on behalf of servicemembers like the Class Members here.  These experienced

counsel believe the Settlement is a fair, adequate, and reasonable resolution of this action.  ECF

No. 2-1 (Settlement Agreement) § 3.3.

Walmart is represented by seasoned litigators at Greenberg Traurig, an international law firm with significant experience defending employment class actions.  Because "[t]here is no doubt that proposing counsel teams have extensive experience in the field," the Settlement should be presumed to be reasonable.  *Hochstadt*, 708 F. Supp. 2d at 108.

**B.    The Settlement is Substantively Fair.**

The relevant *Grinnell* factors weigh strongly in favor of final approval of the Settlement.

**1.    Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1).**

By reaching a favorable settlement prior to litigation, Plaintiff avoids significant expense and delay, and ensures timely and risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & Ger. Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with thousands of potential Class Members across the country, and a claim that dates back to 2004.

As outlined above, the Parties have exchanged significant informal discovery.  Absent settlement, the next step would be extensive formal written discovery, depositions, rounds of expert reports on merits issues and damages, class certification briefing, and summary judgment motions on the merits of Plaintiff's claims and Defendant's affirmative defenses.  Because of the fact-intensive nature of the comparability analysis required by USERRA § 4316(b), a jury trial would likely follow, which would add enormous cost to the litigation.  *See, e.g.*, *In re Relafen*, 231 F.R.D. at 72 ("Costs would include . . . the cost of a four-week trial which promises to feature a battle of various experts.").  And given the developing nature of the law surrounding paid-leave claims under USERRA, it is likely there would be an appeal of an order granting class

certification or on the merits, either before or after a trial.  Any appeal would extend the duration of the litigation for years.  Engaging in this further litigation would be timely and costly.

The proposed Settlement, on the other hand, provides substantial monetary and programmatic relief available to Class Members in a certain, prompt, and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2.    The Reaction of the Class Supports Final Approval (Grinnell Factor 2).

The positive reaction of the Class strongly supports granting final approval.  To date, the Claims Administrator has received 1,999 claim forms, no Class Member has objected to the Settlement, only one Class Member has opted out, and the Class Representative strongly supports it.  Ex. E (Settlement Administrator Decl.) ¶¶ 13, 14, 16; Ex. F (Tsui Decl.) ¶ 8.

Notice was disseminated to more than 8,650 Class Members and provided to other Class Members through advertisements on social media and in relevant publications.  Ex. E (Settlement Administrator Decl.) ¶¶ 6-7.  The Notice included a detailed explanation of how Class Members could obtain compensation under the Settlement, how to object to the Settlement, and how to exclude themselves from the Settlement.  *Id.* ¶ 9

 The "favorable reaction of [a] class to settlement, albeit not dispositive, constitutes strong evidence of fairness of [a] proposed settlement and supports judicial approval."  *Hill v. State St. Corp.*, No. 09 Civ. 12146, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015), *appeal dismissed*, 794 F.3d 227 (1st Cir. 2015) (quoting *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999)) (citing *In re P.R. Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011)); *see also Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement].").

In the 108 days since the Claims Administrator distributed notice, Class Counsel has responded to approximately 60 communications from current and former Walmart employees, the vast majority of whom were Class Members, seeking information related to the settlement. Scimone Decl. ¶ 33. None have expressed concerns or negative views of the settlement. *Id*.

Nickolas Tsui, the Class Representative, has endorsed the settlement. Ex. F (Tsui Decl.) ¶ 8.

Therefore, this factor also supports final approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3).

There was more than sufficient discovery for the Parties and their counsel to make sound judgments about how to settle this case on reasonable terms. In this context, there is no "require[ment] that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107; *see also Baptista v. Mut. of Omaha Ins. Co*., 859 F. Supp. 2d 236, 241 (D.R.I. 2012) ("minimal and primarily informal" discovery was sufficient where class counsel were experienced in relevant areas of litigation and had a strong understanding of the strength of their case).

Here, before commencing the negotiations, Walmart produced documents about Walmart's policies and enormous datasets containing detailed, anonymized personnel information on nearly 7,500 potential Settlement Class Members covering a 17-year period. Scimone Decl. ¶ 20. After the mediation, Walmart provided additional anonymized personnel data, and the parties continued to exchange information and analyze the class claims. *Id.* at ¶ 22.

Given the substantial discovery that occurred and the detailed information the Parties used to negotiate the Settlement, they had "sufficient discovery . . . to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107; *cf. Matheson v. T-Bone Rest.,*

*LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval and finding that the parties "obtained sufficient discovery to weigh the strengths and weaknesses of their claims" where the parties had engaged in "an efficient, informal exchange of information" and participated in a day-long mediation).

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case.  This factor supports final approval.

### 4.    Plaintiff Would Face Substantial Risks if the Case Proceeded (Grinnell Factors 4 and 5).

Although Plaintiff believes his case is strong and suitable for class treatment, he and the Class would face significant risks, including legal, factual, and procedural obstacles to establishing liability, defeating Walmart's defenses, certifying a class, and proving damages.

"As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication."  *In re Lupron*, 228 F.R.D. at 97.  This is particularly true here, where the application of USERRA § 4316(b) to claims for pay during a period of leave is a matter of first impression in this circuit.  If the case were litigated further, Plaintiff expects that Walmart would challenge Plaintiff's claims at every stage of the litigation, including class certification, summary judgment, trial, and various pre- and post-trial appeals, just as employers have done in *Scanlan v. American Airlines*, *Huntsman v. Southwest Airlines*, *White v. United Airlines*, *Clarkson v. Alaska Airlines*, *Travers v. Federal Express*, *Baker v. United Parcel Service*, and *Haley v. Delta Airlines*.  And among other unsettled legal issues, if the case were litigated, Walmart would likely argue that damages should be offset by the amount of military pay each Settlement Class Member received during their short-term military leave.

A useful point of comparison is *Clarkson v. Alaska Airlines*, No. 19 Civ. 0005, 2021 WL 2080199 (E.D. Wash. May 24, 2021), where the plaintiff survived dismissal, won a

motion for class certification, completed discovery, and lost the case on summary judgment just four weeks from a scheduled trial, with motions *in limine* and other pretrial work already in progress. Scimone Decl. ¶ 12. *Clarkson* is now on appeal, and Plaintiff's counsel (who represent the plaintiff in that case) believe strongly that the class claims have merit. But the risks of losing that appeal remain present, and are similar to the risks Plaintiff would face in this case if litigation continued. These factors favor final approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6).

The risk of obtaining class certification pursuant to Rule 23 and maintaining certification through trial militates in favor of settlement. The Court has not yet certified a class and such a determination would likely be reached only after extensive discovery and briefing by both Parties. Walmart would likely argue that individual questions preclude class certification, and point to obstacles to proving classwide and individual damages. Should the Court certify a class, Walmart could seek permission to file an interlocutory appeal under Rule 23(f) or challenge class certification in a post-trial appeal. *See* Fed. R. Civ. P. 23(f); 28 U.S.C. § 1291; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (decertifying nationwide class in interlocutory appeal under Rule 23(f) that challenged class certification after a decade of litigation); *Braun v. Wal-Mart Stores, Inc.*, 106 A.3d 656 (Pa. 2014) (rejecting post-trial appeal by Walmart challenging the calculation of class members' damages with respect to claims that dated back to 1998). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay.

### 6. Defendant's Ability to Withstand a Greater Judgment Does Not Detract from the Fairness of the Settlement (Grinnell Factor 7).

Plaintiff has no reason to think Walmart lacks the ability to withstand a greater judgment, given the monetary value of the Settlement. But a "defendant['s] ability to withstand a greater

judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at 178 n.9.  At best, the factor is neutral, and does not weigh against approval.  *In re Lupron*, 228 F.R.D. at 97 ("This defendant-oriented factor is largely neutral as there seems little doubt that [defendant corporations] are defendants with classic deep pockets.").

7.    **The Settlement Is Substantial, Even Given the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The settlement provides substantial value given the risks of litigation, even though the recovery could be greater if Plaintiff prevailed and maintained a class through trial and on appeal.  The settlement requires Walmart to undertake substantial programmatic changes, which began in January 2021, to benefit all Class Members and future employees who will take short-term military leave.  *See* ECF No. 2-1 (Settlement Agreement) § 6.1.  This policy provides paid-leave benefits for up to 30 days, which is comparable to the programmatic relief Tsui sought in this case.  *Id.*; Scimone Decl. ¶ 39.  This benefit will result in a concrete, monetary value for those employees who take paid military leave in the future.  Class Counsel estimate that the value of this benefit is approximately $2.5 million per year.  Scimone Decl. ¶ 38.

Further, the settlement provides substantial compensation for all Class Members who filed claims.  Under the terms of the settlement, Walmart will pay $10 million to create the Class Settlement Amount.  Ex. E (Settlement Administrator Decl.)  ¶ 15.  If all requested attorneys' fees and costs, the requested service award, and the costs of notice and claims administration are paid, each Settlement Class Member will receive approximately $933.75 for each year of Short-Term Military Leave ("YML") taken.  Scimone Decl. ¶ 35.  This exceeds the estimated net amount disclosed in the notice of the settlement, which told Settlement Class Members they would likely receive $775 for each year reflected in their claim.  *Id.* ¶ 36.  It also exceeds their actual damages in many instances.  Walmart's available leave data show that Settlement Class

Members took, on average, approximately 20 days of military leave in each year in which military leave was recorded. *Id.* ¶ 37. But the actual number of leave days in a given year ranges from one day to 110 days. *Id.* And actual damages range from approximately $100 to $320 per day of unpaid leave. *Id.* For years with only a handful of leave days, individual recoveries would therefore be greater than actual damages.

Because all the relevant *Grinnell* factors support final approval, Plaintiff's motion for final approval should be approved.

### A.    The Plan of Allocation Is Fair, Reasonable, and Adequate.

"A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate." *Hill*, 2015 WL 127728, at *11 (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 262 (D.N.H. 2007)). Moreover, "[a] plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *Id.* (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012)). To be reasonable, a plan of allocation does not have to treat all class members the same, but "may allocate funds based on the extent of class members' injuries and 'consider the relative strength and values of different categories of claims.'" *Id.* (quoting *In re IMAX Sec. Litig.*, 283, F.R.D. at 192). The view of experienced counsel is given "great weight" on the reasonableness of a plan of allocation. *Id.* (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (to determine if "a plan of allocation is fair, courts look primarily to the opinion of counsel")).

The proposed Plan of Allocation – described in Section 5.4 of the Settlement Agreement – satisfies these standards. ECF No. 2-1 (Settlement Agreement) § 5.4. Each Settlement Class Member will receive an equal pro rata share of the settlement based on the number of YML that she or he identifies and is credited for on a timely claim form. *Id.* § 5.4.3. The parties agreed

that this type of pro rata distribution based on the number of YML was appropriate and reasonable given the difficulty of determining the potential losses for a large portion of the Settlement Class Members. Scimone Decl. ¶ 27. Such a calculation would be difficult for at least two reasons. First, Walmart does not possess military data on when its associates took military leave for more than half of the 2004 to 2020 class period. *Id.* Second, if the case were litigated, Walmart would argue that damages should be offset by the amount of military pay each Settlement Class Member received during each period of short-term military leave. That information is not readily available to the parties. *Id.* Third, even for the years in which Walmart has data on Settlement Class Members' military leaves of absence, there is concern that the data does not capture all days of short-term military leave. *Id.*

In light of this uncertainty, the Plan of Allocation sets forth a reasonable, rational basis to compensate Class Members based on the harm they suffered and the relief they could have obtained. *Hill*, 2015 WL 127728, at *11. Moreover, under the proposed Plan of Allocation, Class Counsel estimate that each Class Member will receive close to or, in some cases, more than 100% of their losses. Scimone Decl. ¶ 37.

Courts also consider the reaction of a class to a plan of allocation. *See Hill*, 2015 WL 127728, at *11-12. The Notice provided to Class Members described the proposed Plan of Allocation in detail and indicated that the deadline for objecting to the Plan of Allocation was September 16, 2021. Ex. E (Settlement Administrator Decl.) ¶¶ 9, 14. To date, no objections have been made. *Id*. ¶ 14. Accordingly, because the Plan of Allocation is fair, reasonable, and adequate, is recommended by experienced and competent counsel, and is not opposed by any Class Member, it should be approved.

**III.        Final Certification of the Proposed Class is Appropriate.**

On April 30, 2021, the Court granted preliminary approval of the Settlement Class as described in § 2.42 of the Settlement Agreement.  ECF No. 30.  Since that time, nothing has changed to alter the propriety of certification, and there have been no objections to any aspect of class certification.  Accordingly, Plaintiff now requests that the Court grant final certification of the Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the settlement.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court (1) grant final approval of the Settlement Agreement; and (2) grant final certification of the Class for settlement purposes.


Dated:  October 4, 2021                          Respectfully submitted,
            New York, NY

                                                  _/s/_ Michael J. Scimone
                                                 Michael J. Scimone*
                                                 Adam T. Klein*
                                                 OUTTEN & GOLDEN LLP
                                                 685 Third Ave., 25th Floor
                                                 New York, NY 10017
                                                 Tel: (212) 245-1000
                                                 Email: mscimone@outtengolden.com
                                                 Email: atk@outtengolden.com

                                                 Nathaniel Silver
                                                 BLOCK & LEVITON LLP
                                                 260 Franklin Street, Suite 1860
                                                 Boston, MA 02110
                                                 Tel: (617) 398-5600
                                                 Email: nate@blockleviton.com

                                                 R. Joseph Barton*
                                                 BLOCK & LEVITON LLP
                                                 1735 20th Street NW
                                                 Washington, DC 20009

Tel: (202) 734-7046
Email: joe@blockesq.com

Peter Romer-Friedman*
GUPTA WESSLER PLLC
1900 L St. NW, Suite 312
Washington, DC 20036
Tel: (202) 888-1741
Email: peter@guptawessler.com

Matthew Z. Crotty*
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email:matt@crottyandson.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

* admitted *pro hac vice*
*Attorneys for Plaintiff and the Proposed
Class*